## Case No. 6,450.

### The HIAWATHA.[1]

### The CRENSHAW.

Circuit Court, S. D. New York. Nov. 20, 1861.[2]

PRIZE—BLOCKADE—RESIDENCE OF OWNER OF VESSEL.

[Appeal from the district court of the United States for the Southern district of New York.

[Libels were filed against the bark Hiawatha and the schooner Crenshaw for violations of the blockade. The district court entered decrees of condemnation against both vessels and their cargoes (Case No. 6,451), and the claimants of both vessels appeal.]

These cases are two of the prize cases, which, with several others, involving a large amount of property, including vessels and cargo, have been argued on appeal, and submitted to the court. NELSON, Circuit Justice, has affirmed the decrees in these two cases, with a view to facilitate a hearing before the supreme court, at Washington, without delivering any opinion, or expressing any. The two cases involve the two important and novel questions common to most of the cases pending on appeal before him, viz. the effect of the blockade, and whether the fact of the residence of an owner in the disturbed or insurrectionary district furnishes evidence that the property captured on the high seas is enemies' property, previous to the act of congress of July 13, 1861 [12 Stat. 255].

The remaining cases will be held by the judge until these two are disposed of by the supreme court. From the novelty of the question, and the very large amount of property involved, and in the hands of the marshal and the custody of the court, it was understood that the cases would go to the supreme court, whichever way they were decided in the circuit, and, as it is the practice

---

[2] See Pendleton v. Franklin, 7 N. Y. 508.

[3] But see The Hendrick Hudson [Case No. 6,355].

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[1] [Not previously reported.]

[2] [Affirming Case No. 6,451. Decree of circuit court affirmed by supreme court in 2 Black (67 U. S.) 635.]

of the court to give preference to government cases, the principles of which are in daily application, the judge has deemed it advisable to adopt the course above mentioned.

[NOTE. From the decrees of condemnation in these cases the several claimants took an appeal to the supreme court. 2 Black (67 U. S.) 635. Mr. Justice Grier delivered an opinion affirming the decrees. Mr. Justice Nelson delivered a dissenting opinion, which was concurred in by Chief Justice Taney, Mr. Justice Catron, and Mr. Justice Clifford. The proposition of law as to the power of the president to institute a blockade of ports in possession of persons in armed rebellion against the government was discussed at some length. To legitimate the capture of a neutral vessel or property on the high seas, a war must exist de facto, and the neutral must have a knowledge or notice of intention of one of the parties belligerent to use this mode of coercion against a port, city or territory in possession of the other. It is not necessary, to constitute a war, that the belligerent parties should be separate and independent states. War exists where one belligerent claims sovereign rights against the other. A civil war is never solemnly declared. It becomes such by its accidents,—the number, power, and organization of the persons who originate and carry it on. Its actual existence is a fact in domestic history which the court is bound to notice and to know. The president was bound to meet it in the shape it presented itself, without waiting for congress to baptize it with a name. He must determine what degree of force the crisis demands.

[The second question considered in the opinion was, what is included in the term "enemies' property"? It is a technical phrase peculiar to prize courts, and depends upon principles of public policy, as distinguished from the common law. It does not depend upon the personal allegiance of the owner. It is the illegal traffic which stamps it as enemies' property.]